UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIUS ROSS,

    Petitioner,

v.	CASE NO. 8:09-CV-1348-T-27TGW
    CRIM. CASE NO. 8:08-CR-218-T-27TGW

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

Evidentiary hearings were conducted on September 14, 2010, and October 27, 2010, on Ground Four of Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, which alleges ineffective assistance of counsel.(CV Dkt. 19, p. 8). Grounds One, Two, Three, and Five were denied by an earlier order, entered on August 9, 2010 (CV Dkt. 30). Counsel was appointed to represent Petitioner. Based on the testimony and evidence presented, the Court finds that Ground Four lacks merit and warrants no relief.

**Procedural background**[1]

Petitioner was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (CR Dkt. 1). On August 12, 2008, represented by retained counsel Thomas Ostrander, Petitioner pleaded guilty pursuant to a plea

---

[1] As set forth in the August 9, 2010 order.

agreement, which included an appeal waiver provision (CR Dkts. 28, 30).[2] After Petitioner pleaded guilty, Attorney Ostrander was granted leave to withdraw (CR Dkt. 45). Ultimately, Attornet Robert Tager was appointed to represent Petitioner (CR Dkt. 48). Tager represented Petitioner at sentencing. On January 28, 2009, Petitioner was sentenced to seventy-eight months imprisonment to be followed by three years of supervised release (CR Dkt. 54). Petitioner did not file a direct appeal.

Petitioner's *pro se* § 2255 motion to vacate was docketed on July 17, 2009 (CR Dkt. 56). Notwithstanding the pendency of that motion, on May 25, 2010, Petitioner received a Rule 35 sentence reduction based on post-sentencing substantial assistance (CR Dkt. 75).

**Ground Four**

In Ground Four of his amended § 2255 motion, Petitioner contends: "Counsel failed to perfect an appeal, after being instructed to do so by Petitioner, based on Court's findings and conclusions on Petitioner's suppression hearing." (CV Dkt. 19 at pg. 8). *See Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005). More specifically, in his memorandum of law in support of Ground Four, Petitioner asserts:

"Petitioner was sentenced to 78 months, on January 28, 2009. According to the

---

[2] Petitioner's plea agreement provided:

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(CR Dkt. 34, p. 11).

> minutes on Petitioner's sentence, acknowledgement [sic] of the right to appeal, was filed in open court. On this same day, Petitioner requested that his counsel file a Notice of Appeal, to pursue Petitioner's appellate rights, and challenge the court's findings and conclusions on the Petitioner's suppression hearing.
>
> . . .
>
> Counsel failed to perfect an appeal in this matter, after being instructed to do so by the Petitioner."

(CV Dkt. 20 at pp. 12-13).

During the September 14th evidentiary hearing, Petitioner testified that following denial of his motion to suppress, he "verbalized to Attorney Thomas Ostrander that [he] wished for him to place a notice of appeal for the denial of that motion to suppress." (September 14, 2010 hearing transcript, pp. 19-20).[3] According to Petitioner, on August 6, 2008, when Attorney Ostrander visited him at the Pinellas County Jail to discuss the proposed plea agreement, Petitioner "addressed to him the - - again that I wanted to appeal my motion to suppress. He stated that for me not to worry for he had done so the previous day and that also that right was - - it was not need for me to worry about it because that right was reserved within my plea agreement." (Id. at p. 20). Petitioner testified that he believed Attorney Ostrander had "filed the notice of appeal." (Id. at p. 22).

Petitioner testified that at the conclusion of his sentencing hearing, he told his third attorney, Robert Tager, "to make sure that my notice of appeal was filed for my motion to suppress." (Id. at pp. 23-24). Petitioner testified that approximately three weeks after he was sentenced, he spoke with Attorney Tager "over the telephone and asked him in - - about the - - basically the status of the appellate - - of the appeal or whatever. He stated that he had requested some information but hadn't

---

[3] In his amended § 2255 motion, Petitioner did not assert that he asked Attorney Ostrander to file a notice of appeal. He only asserted that when he was sentenced on January 28, 2009, he requested his attorney to file a notice of appeal (CV Dkt. p. 12). Attorney Tager represented Petitioner at sentencing.

received anything yet, and that he advised - - and he advised me that I should start putting together my notice for my 2255." (Id. at p. 26).

Attorney Tager testified that Petitioner was very disappointed with the outcome of the suppression hearing, and although it came up in all of their conversations, Petitioner never asked him to file a notice of appeal (Id. at pp. 7-8, 16). Tager testified that on January 30, 2009, two days after sentencing, he visited Petitioner at the jail (Id. at p.8). Tager took detailed notes during the visit, documenting his conversations with Petitioner, consistent with his practice as a criminal defense attorney (Id.; Exhibit 3).[4]

Tager's notes indicate that he and Petitioner discussed: 1) Petitioner's right to appeal, and the likelihood that an appeal would be dismissed because of the appeal waiver in his plea agreement; 2) why Petitioner did not get a § 5K1.1 substantial assistance motion and reduction at sentencing; and 3) the hope that Petitioner would receive a Rule 35 sentence reduction, and that the Government may not give file a Rule 35 motion if he elected to appeal (Id. at pp. 9-10). It had been Tager's experience that the U.S. Attorney's Office, based on policy, would not file a Rule 35 motion if a defendant filed an appeal (Id. at p. 13). Tager's notes indicate that Petitioner told Tager he did not want to appeal, that he was going to wait for a Rule 35 motion, and if he did not get one, he would file a motion to vacate pursuant to 28 U.S.C. § 2255 (Id. at p. 10).[5]

On February 4, 2009, Tager spoke with Petitioner by phone (Id. at p.10). Petitioner, although disappointed that he had not yet received a Rule 35 reduction, reiterated that he did not want to

---

[4] It was Tager's practice to take notes of his conversations with clients during jail visits to document what was discussed (p. 15).

[5] On February 10, 2009, Attorney Tager mailed Petitioner a copy of the judgment and a form 28 U.S.C. § 2255 motion (Id. at p.6).

4

appeal, recalling that during sentencing, "the judge or somebody else" told him that he probably would not get a Rule 35 reduction if he filed an appeal (Id. at p. 11). He asked Tager to send him a form § 2255 motion.[6]

In direct conflict with Tager's testimony that he met with Petitioner on January 30, 2009 at the jail, and notwithstanding that Tager's contemporaneous notes corroborated that jail visit, Petitioner testified that Tager did not visit him at the jail on January 30, 2009 (Id. at p. 44). Although Petitioner's testimony was not credible, because of the significance of the discussions between Tager and Petitioner during the January 30, 2009 jail visit, and because Attorney Ostrander was not available to testify, the evidentiary hearing was adjourned and continued to October 27, 2010. The Government was directed to secure Ostrander's attendance and to investigate whether the visitation log at the Pinellas County jail confirmed Tager's visit with Petitioner on January 30, 2009 (September 14, 2010 hearing transcript at p. 45).

Attorney Ostrander recalled that while representing Petitioner, he filed a motion to suppress on his behalf (Id. at pp. 4-5). After an evidentiary hearing, the motion was denied, and Petitioner indicated that he wanted to appeal (Id. at p. 5). Ostrander explained to Petitioner that he did not believe an appeal could be brought at that time because it would be interlocutory, but that if he went to trial and was convicted, Petitioner could appeal the denial of the motion to suppress at that time (Id. at pp. 5-6).

Ostrander testified that he subsequently met with Petitioner and discussed the Government's

---

[6] According to Tager, although Tager offered several times to file a motion seeking to withdraw Petitioner's guilty plea, Petitioner was not interested in withdrawing his guilty plea and never vacillated from wanting to go forward with sentencing. (Id. at p. 17).

proposed plea agreement (Id. at p. 7). Ostrander recalled that he "did not read [the plea agreement] to [Petitioner] verbatim but went through paragraph by paragraph and just synopsized the paragraphs and the significance of each of the sections and paragraphs." (Id. at p. 8). He provided Petitioner with a copy of the plea agreement (Id. at pp. 8, 13). When reviewing the plea agreement with Petitioner, Ostrander explained the waiver of the right to appeal "in detail and explained to him the significance." (Id. at pp. 12-13). Ostrander denied that he told Petitioner that he had filed a notice of appeal the day before (Id. at pp. 11-12).

In response to the Court's inquiry of whether he had any conversations with Petitioner in which he explained to Petitioner that if he plead guilty that he was not going to be able to appeal the denial of the motion to suppress, Ostrander testified:

> Yes. As I said, once he decided he wanted to appeal -- or, I mean, wanted to plead, I said, all that is off. I mean, he was extremely angry with me about losing the appeal or -- not the appeal, the motion to suppress hearing. He felt that I didn't raise the issues he wanted me to raise. And that's what precipitated all the problems with him and his mother that made me withdraw.
>
> But he -- you know, he knew exactly what was going on, you know, so -- but, no, I told him once you plead, you can forget about appealing anything. You know, if you want to appeal, you've got to go through and go to trial, and he didn't want to do that, at least that was my opinion, you know. I did not think this was going to be a dispositive issue. So I said and if you do appeal it, forget about getting a plea.

(Id. at pp. 13-14).

F.B.I. Special Agent Sandoval assisted the Government in obtaining the Pinellas County jail visitation logs for January 28, 2009 through February 5, 2009 (October 27, 2010 hearing transcript at p. 39; Exhibits 1, 2). Sandoval testified that although the jail had a record of his and Attorney Tager's visit with Petitioner on December 8, 2008 regarding Petitioner's cooperation, its records did not reflect additional visits with Petitioner by his attorneys (Id. at pp. 39, 41). Deputy Christine

Stewart, the records custodian at the jail, advised Agent Sandoval that during the requested time period, the jail was "in a transition point," and that she believed that the records may have been destroyed as part of the transition to computerized record keeping (Id. at pp. 39-40). Stewart's belief that the jail visitation logs may have been destroyed explains the absence of entries reflecting Tager's January 30, 2009 visit with Petitioner. For example, it is undisputed that Tager met with Petitioner at the jail on January 27, 2009 to discuss the sentencing scheduled for the next day. Notwithstanding, the jail records do not reflect that visitation.

During the second evidentiary hearing, Tager reiterated that he visited Petitioner in the jail on January 30, 2009 (October 27, 2010 hearing transcript at pp. 25-26). Tager read from his contemporaneous notes of that jail visit:

> I explained, though, that if he does appeal it will probably be denied because of the appeal waiver. I also explained, though, that I could argue against it but that we will probably lose. I also explained that if he appeals, there's a chance that the government will not Rule 35 him and that they will use other informants. I advised him that based on what the AUSA said they consider him to be a very bad guy. I have a parenthesis, one of his priors involved a fight with a cop where he was struggling to get the cop's firearms and he was so forceful he broke the cop's belt off, close parenthesis.
>
> He said he did not want to appeal. He said he'll wait for the year and if he doesn't get the Rule 35 he'll file for a 2255, ineffective assistance. Next heard from him or spoke to Agent Sandoval after that. And then on the 4th, he called my office. He said that he is very sad and that his world is falling apart. He also said he does not want the appeal because even the judge said it could affect him towards his Rule 35, but he doesn't want to wait until June or July to do the 2255. I advised I would try and get the info quicker.

(Id. at pp. 26-27).

Tager's testimony was credible, and Petitioner presented absolutely nothing to support a contrary conclusion. Tager is an experienced criminal defense attorney who regularly represents

private and CJA clients before the Court. His contemporaneous notes of his January 30, 2009 jail visit with Petitioner corroborate his testimony. He had no reason to fabricate his testimony, whereas Petitioner has every reason to fabricate his. Petitioner's testimony was simply incredible and not worthy of serious consideration. He presented as calculating, manipulative and deceptive.[7] He did not fare well in cross examination by the Government, or in his responses to the Court's questions. Simply put, Petitioner's testimony is rejected by the Court as the trier of fact.

It is abundantly clear that Tager fulfilled his Sixth Amendment responsibility to discuss the advantages and disadvantages of pursuing an appeal with Petitioner and determine his wishes. His testimony unequivocally establishes that Petitioner did not instruct him to file an appeal on his behalf. It is apparent that Petitioner made a knowing and voluntary decision to plead guilty and forego appellate review of the order denying his motion to suppress, in the hope of receiving a Rule 35 sentence reduction based on substantial assistance, which he ultimately received.

Attorney Ostrander's testimony was likewise credible. He confirmed that after the motion to suppress was denied, Petitioner did express an interest in appealing the denial. However, Ostrander correctly explained to Petitioner that the denial of the motion to suppress was not immediately appealable. *See Carroll v. United States*, 354 U.S. 394 (1957) (disallowing interlocutory appeal of an order denying motion to suppress evidence).[8] Ostrander advised Petitioner that if he

---

[7] For example, his testimony that he never read the plea agreement is contradicted by the record which indicates that he initialed each page of the plea agreement and when the magistrate judge asked him during the change of plea hearing whether he had read the plea agreement in its entirety before signing it, Petitioner responded that he had read it. When confronted with this, his testimony that he "misunderstood" the magistrate's question, and that he just wanted to plead guilty and get the case over with is simply incredible.

[8] See also: *United States v. Mock*, 604 F.2d 336, 340 (5th Cir. 1979) ("Orders denying motions to suppress are not collateral to the merits; they are 'but a step in the criminal case preliminary to the trial thereof.' *Cogen v. United States*, 278 U.S. 221, 227 (1929). This factor therefore points toward rejecting the notion of immediate review."); *Corporan-Cuevas v. United States*, 2003 U.S. Dist. LEXIS 15041, at *35 (D.P.R. May 14, 2003) ("In

went to trial and was convicted, he could appeal the denial of the motion to suppress at that time. When Ostrander subsequently met with Petitioner to discuss the proposed plea agreement, Ostrander explained the appeal waiver to Petitioner and advised Petitioner that once he decided to plead guilty, "he could forget about appealing anything." He also told Petitioner that if he did appeal the denial of the motion to suppress, he could forget about getting a plea agreement. Finally, as noted, Ostrander unequivocally testified that he never told Petitioner that he had filed a notice of appeal of the denial of the motion to suppress.

## Conclusion

It is apparent, and the Court so finds, that Attorney Tager fulfilled his Sixth Amendment responsibility to Petitioner. He discussed the right to appeal with Petitioner, explained the advantages and disadvantages of pursuing an appeal, and determined Petitioner's wishes. Petitioner did not instruct Tager to file an appeal. Rather, he knowingly decided to forego an appeal because he did not want to risk losing the opportunity to receive a Rule 35 sentence reduction and specifically told Tager that he did not want to file an appeal for that reason.

Tager's consultation with Petitioner satisfied the requisite "reasonable effort to determine the client's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Tager therefore met "an objective standard of reasonableness" under *Strickland*[9] and rendered effective assistance of counsel. *Gomez-Diaz v. United States*, 433 F.3d at 792. This is not a case, therefore, in which counsel neglected to consult with the client about the client's appellate rights or disregarded a specific request

---

criminal proceedings denial of pretrial motions relating to discovery and motions to suppress have been held nonappealable.") (citing *United States v. Ryan*, 402 U.S. 530, 533 (1971) (motion to quash subpoena); *DiBella v. United States*, 369 U.S. 121 (1962) (motion to suppress)).

[9]*Strickland v. Washington*, 466 U.S. 668 (1984).

that counsel file an appeal.[10]

Accordingly, it is **ORDERED**:

1. Ground Four of Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 19) is **DENIED**.

2. The Clerk is directed to enter judgment against Petitioner and close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.[11] A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

---

[10] As the Court noted *infra*, in his memorandum of law in support of his amended § 2255 motion, Petitioner only asserted that on January 28, 2009, he asked his attorney (Attorney Tager at the time) to file a notice of appeal. To the extent Petitioner now asserts that he is entitled to relief because Attorney Ostrander provided ineffective assistance of counsel when he failed to file a notice of appeal after Petitioner instructed him to do so, the claim is without merit. First, had Attorney Ostrander filed an interlocutory appeal on the denial of the motion to suppress, it would have been an exercise in futility. Thus, Petitioner has not demonstrated that Attorney Ostrander's performance was deficient. Further, Petitioner does not demonstrate prejudice as a result of Attorney Ostrander failing to file an interlocutory appeal from the denial of the motion to suppress. In most cases where an attorney fails to file an appeal after being instructed to do so by the client, "prejudice is presumed because rather than being denied the opportunity for a fair proceeding, the defendant is denied the opportunity for a proceeding at all." *Gomez-Diaz*, 433 F.3d at 792 (citations omitted). Under the circumstances of this case, however, prejudice is not presumed because Petitioner was not deprived of his fundamental right to appeal by Attorney Ostrander.

[11] See Rule 11 of the Rules Governing Section 2254 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** this 7th day of December, 2010.

*/s/ James D. Whittemore*
JAMES D. WHITTEMORE
United States District Judge

Copy furnished to:
Counsel of Record